## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| | : | |
| **In Re: AUTOMOTIVE PARTS** | : | **Case No. 12-md-02311** |
| **ANTITRUST LITIGATION** | : | **Honorable Marianne O. Battani** |
| | : | |
| | : | |
| **In Re: SMALL BEARINGS CASES** | : | |
| | : | |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | **2:17-cv-04201-MOB-MKM** |
| **ALL DIRECT PURCHASER ACTIONS** | : | **2:17-cv-10853-MOB-MKM** |
| | : | |

## DIRECT PURCHASER PLAINTIFF'S MOTION FOR FINAL
## APPROVAL OF PROPOSED SETTLEMENT WITH MINEBEA DEFENDANTS

Direct Purchaser Plaintiff hereby moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement with Defendants MINEBEA MITSUMI Inc., NMB (USA), Inc., and NMB Technologies Corporation (collectively, "Minebea"). In support of this motion, Plaintiff relies upon the accompanying brief, which is incorporated by reference herein. Minebea consents to this motion.

DATED: December 18, 2017                    Respectfully submitted,

                                           /s/David H. Fink
                                           David H. Fink (P28235)
                                           Darryl Bressack (P67820)
                                           FINK + ASSOCIATES LAW
                                           38500 Woodward Ave, Suite 350
                                           Bloomfield Hills, MI 48304
                                           Telephone: (248) 971-2500

                                           *Interim Liaison Counsel*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Class Counsel and Settlement Class Co-Lead Counsel*

M. John Dominguez
COHEN MILSTEIN SELLERS
   & TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 833-6575

Solomon B. Cera
Thomas C. Bright
Pamela A. Markert
CERA LLP
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230

*Settlement Class Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| | : | |
| In Re:  AUTOMOTIVE PARTS | : | Case No. 12-md-02311 |
| ANTITRUST LITIGATION | : | Honorable Marianne O. Battani |
| | : | |
| | : | |
| In Re: SMALL BEARINGS CASES | : | |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | 2:17-cv-04201-MOB-MKM |
| ALL DIRECT PURCHASER ACTIONS | : | 2:17-cv-10853-MOB-MKM |
| | : | |

**BRIEF IN SUPPORT OF DIRECT PURCHASER**
**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF**
**<u>PROPOSED SETTLEMENT WITH MINEBEA DEFENDANTS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

STATEMENT OF ISSUES PRESENTED...................................................... vi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................ vii

INTRODUCTION .......................................................................................... 1

I.      BACKGROUND ................................................................................. 1

II.     TERMS OF THE SETTLEMENT AGREEMENT ............................ 3

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ............ 5

        A.      The Governing Standards for Final Approval. ........................ 5

        B.      The Proposed Settlement is Fair, Reasonable, and Adequate. ............... 7

                1.      The Likelihood of Plaintiff's Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval. ............... 8

                2.      The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval. ............... 10

                3.      The Judgment of Experienced Counsel Supports Approval. ............ 11

                4.      The Amount of Discovery Completed Is Sufficient. ............. 11

                5.      The Reaction of Class Members. ............. 12

                6.      The Settlement is the Product of Arm's-Length Negotiations. ......... 12

                7.      The Settlement is Consistent with the Public Interest. ........... 13

IV.     NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS ............ 13

V.      CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE............ 15

        A.      The Proposed Direct Purchaser Minebea Settlement Class Satisfies Rule 23(a).  15

                1.      The Settlement Class is Sufficiently Numerous. ............. 16

                2.      There are Common Questions of Law and Fact. ............. 16

                3.      Plaintiff's Claims are Typical of Those of the Settlement Class. ........... 17

                4.      Plaintiff Will Fairly and Adequately Protect the Interests of the Class. ... 18

        B.      Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes. ............ 19

                1.      Common Legal and Factual Questions Predominate. ............ 20

i

2.      A Class Action is Superior to Other Methods of Adjudication. ............... 21

VI.    CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 15, 20, 21

*Barry v. Corrigan*, 79 F. Supp 3d 712 (E.D. Mich. 2015) ........................................................... 16

*Barry v. Corrigan*, No. 13-cv-13185, 2015 WL 136238 (E.D. Mich. Jan. 9, 2015) ................... 18

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007) ........................................................... 20

*Carson v. Am. Brands, Inc.,* 450 U.S. 79 (1981) ........................................................................... 7

*Cordes & Company Financial Services. Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ...................................................................................................... 19

*Date v. Sony Electronics, Inc.*, No. 07-15474,
    2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ................................................................. 11, 18

*Davidson v. Henkel Corp.,* 302 F.R.D. 427 (E.D. Mich. 2014) .................................................... 16

*Dick v. Sprint Commc'ns*, 297 F.R.D. 283 (W.D. Ky. 2014) ..................................................... 4, 6

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*,
    No. 10-cv-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ......................................... 17

*Ford v. Fed.-Mogul Corp.*,
    No. 2:09-CV-14448, 2015 WL 110340 (E.D. Mich. Jan. 7, 2015) .................................... 8, 11

Grenada Invs., Inc. v. DWG Corp., 962 F.2d 1203 (6th Cir.1992) ............................................... 8

*Griffin v. Flagstar Bancorp, Inc.*,
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................... passim

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009) ........................................ 19

*In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir. 1996) ............................................................. 17

*In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp.2d. 336 (E.D. Pa. 2007) .................... 5

*In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297 (E.D. Mich. 2007) ................................. 21, 22

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003) .............................. passim

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    No. 3:08–MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ........................................ 5

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) .............. 11

*In re Flat Glass Antitrust Litig.*, 191 F.R.D 472 (W.D. Pa. 1999) ................................................ 17

*In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012) ................................................... 22

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................... 12

*In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136 (E.D. Pa. 2013) ............................ 13

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) .................................... 3

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y 1996) ...................... 22

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ......................................... 11

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................................... 12

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) .................................. passim

*In re Polyurethane Foam Antitrust Litig.*,
No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .......................................... 7

*In re Scrap Metal Antitrust Litig.,* 527 F.3d 517 (6th Cir. 2008) ........................................... 19, 20

*In re Southeastern Milk Antitrust Litig.*,
No. 2:07- CV-208, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ......................................... 5

*In re Southeastern Milk Antitrust Litig.*,
No. 2:07-CV-208, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ......................................... 20

*In re Telectronics Pacing Sys. Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ......................................................................... 7, 10, 12

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ...................................................................................... 15, 16, 18

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ....................................... passim

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) ................................. 6, 8

*Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007 (E.D. Mich. 2005) ...................................... 5

*Marsden v. Select Medical Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007) ............................................ 16

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950).............................................. 13

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006)......................................................................................... 6

*Olden v. Gardner*, 294 Fed. Appx. 210 (6th Cir. 2008) ........................................................ 5

*Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601 (E.D. Wisc. 2000) ............................. 21

*Senter v. Gen. Motors Corp.,* 532 F.2d 511 (6th Cir. 1976) ........................................................ 18

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)........................ 6, 8, 11, 12

*Sheick v. Automotive Component Carrier LLC*,
    No. 09–14429, 2010 WL 3070130 (E.D. Mich. Aug. 02, 2010) ................................................ 18

*Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545 (E.D. Mich. Feb. 24, 2016)............. 5

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ................................... 15, 16, 18

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ...................................................... 6

*Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262 (E.D. Ky. 2009) .............................. 15

*UAW v. General Motors Corp.,* 497 F.3d 615 (6th Cir. 2007) ............................................... passim

*Van Horn v. Trickey,* 840 F.2d 604 (8th Cir. 1988)....................................................................... 7

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)........................................................ 5, 10, 11

**Rules**

Fed. R. Civ. P. 23(a)(1)............................................................................................................. 16

Fed. R. Civ. P. 23(a)(2)............................................................................................................. 16

Fed. R. Civ. P. 23(a)(3)........................................................................................................ 17, 18

Fed. R. Civ. P. 23(a)(4)........................................................................................................ 18, 19

Fed. R. Civ. P. 23(b)(3)........................................................................................................ 19, 21

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................. 13, 14

Fed. R. Civ. P. 23(e)(1).......................................................................................................... 13, 14

Fed. R. Civ. P. 23(e)(2)................................................................................................................ 7

**STATEMENT OF ISSUES PRESENTED**

1.      Whether the proposed settlement between the Direct Purchaser Plaintiff and Defendants MINEBEA MITSUMI Inc., NMB (USA), Inc., and NMB Technologies Corporation (collectively, "Minebea" or the "Minebea Defendants"), as set forth in the Settlement Agreement between the Direct Purchaser Plaintiff and Minebea, is fair, reasonable and adequate, and whether the Court should approve the settlement under Fed. R. Civ. P. 23.

2.      Whether the Court should certify the Minebea Settlement Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of the settlement only.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
        521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.*, 12-MD-02311, 2:12-cv-00103, Doc. No. 497 (E.D. Mich.
        June 20, 2016)

*Date v. Sony Electronics, Inc.*,
        No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.*,
        No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
        218 F.R.D. 508 (E.D. Mich. 2003)

*In re Packaged Ice Antitrust Litig.*,
        No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
        No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
        527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
        722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
        No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
        No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
        133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
        137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
        497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Plaintiff, on behalf of a Settlement Class composed of direct purchasers of Small Bearings in the United States, has reached a settlement with the Minebea Defendants. Under the terms of the proposed settlement (2:17-cv-10853, Doc. No. 4-1), Minebea will pay a total of $9,750,000[1] and provide cooperation to assist in the prosecution of the claims against the remaining Defendants.

For the reasons set forth herein, Direct Purchaser Plaintiff respectfully submits that the proposed settlement is fair, reasonable and adequate, and should be approved by the Court. Submitted herewith is a proposed Order and Final Judgment agreed to by Direct Purchaser Plaintiff and Minebea.

## I.    BACKGROUND

In November 2015, a class action lawsuit was filed against NSK Ltd., NSK Americas, Inc., and NSK Corporation (the "NSK Defendants") (the "NSK Action")[2] on behalf of a class of direct purchasers of "Small Bearings." [3]  Plaintiff McGuire Bearing Company has reached a proposed settlement with Minebea and in connection therewith filed a class action complaint alleging that Minebea conspired with the NSK Defendants to suppress and eliminate competition

---

[1] As discussed in Section II of this Brief, and in the Notice of Proposed Settlement of Direct Purchaser Class Action with Minebea Defendants and Hearing on Settlement Approval ("Notice") (attached as Exhibit 1), the Settlement Agreement gives Minebea the right to withdraw from the settlement based on a certain level of valid and timely requests for exclusion by members of the Minebea Settlement Class.

[2] *Bearing Service, Inc. v. NSK Ltd., et al.*, Case No. 2:15-cv-13945 (E.D. Mich.). Minebea is an unnamed co-conspirator in the NSK Action.

[3] "Small Bearings" refers to bearings whose outer diameter is 30 millimeters or less. Small Bearings are used in numerous applications, including but not limited to the following automotive applications: air conditioning compressors, alternators, anti-lock braking systems, cooling fans, fuel pumps, motors for electric control systems, starters, steering systems, transmissions, water pumps, wheels, and windshield wiper motors.

for Small Bearings by agreeing to raise, fix, maintain, or stabilize prices, and to allocate markets and customers, for Small Bearings sold in the United States, in violation of federal antitrust laws. Plaintiff further alleges that as a result of the conspiracy, it and other direct purchasers of Small Bearings were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct.

On May 23, 2017, the Court preliminarily approved the proposed Minebea settlement and provisionally certified a Direct Purchaser Minebea Settlement Class, defined as follows:

> All individuals and entities (excluding any Defendant and their present and former parents, subsidiaries, and affiliates) that purchased Small Bearings in the United States directly from one or more Defendants from January 1, 2003 through February 15, 2017.

2:17-cv-10853, Doc. No. 14 at ¶ 4 (the "Preliminary Approval Order").[4]

By Order dated October 25, 2017, the Court authorized dissemination of notice of the proposed Minebea settlement to members of the Minebea Settlement Class. (2:17-cv-10853, Doc. No. 19) (the "Notice Dissemination Order").

Pursuant to the Notice Dissemination Order, on November 14, 2017, 1,047 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants. A Summary Notice of Proposed Settlement of Direct Purchaser Class Action with Minebea Defendants and Hearing on Settlement Approval (the "Summary Notice") was published in the national edition of *The Wall Street Journal* and in *Automotive News* on

---

[4] For purposes of the Settlement Class definition, the Defendants are: MINEBEA MITSUMI Inc., NMB (USA), Inc., and NMB Technologies Corporation, NSK Ltd., NSK Americas, Inc., and NSK Corporation. (2:17-cv-10853, Doc. No. 4-1 at ¶ 3).

November 27, 2017.  In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[5]

The deadline for submission of objections to the proposed settlement, and for requests for exclusion from the Settlement Class, is January 8, 2018.

## II.    TERMS OF THE SETTLEMENT AGREEMENT

Plaintiff, on behalf of the Minebea Settlement Class, has entered into a settlement with Minebea dated February 15, 2017 under which Minebea has agreed to pay $9,750,000 (2:17-cv-10853, Doc. No. 4-1).[6]

In addition to the cash payment, the proposed settlement requires Minebea to cooperate with Plaintiff in the prosecution of the NSK Action by providing the following types of cooperation: (a) the production of documents, data and other information potentially relevant to Direct Purchaser Plaintiff's claims; (b) assistance in understanding information produced to Direct Purchaser Plaintiff and facilitating the use of such information at trial; (c) meetings between Settlement Class Counsel and Minebea's attorneys who will provide proffers of information relevant to the NSK Action; (d) witness interviews; (e) depositions; and (f) trial testimony.  (2:17-cv-10853, Doc. No. 4-1 at ¶¶ 31-33).  As stated in *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), such cooperation provisions provide a "substantial benefit" to the class and "strongly militate[] toward approval of the Settlement

---

[5] Counsel for the Minebea Defendants have informed Settlement Class Counsel that Minebea fulfilled its obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005") ("CAFA"), by disseminating the requisite CAFA notice to the appropriate federal and state officials on March 27, 2017.

[6] The Settlement Agreement is subject to rescission, based on a certain level of valid and timely requests for exclusion by members of the Minebea Settlement Class, in accordance with the terms set forth in a confidential letter agreement between Minebea and the Settlement Class. The confidential letter will be provided to the Court for *in camera* review upon its request.

3

Agreement."   This cooperation will enhance and strengthen Direct Purchaser Plaintiff's prosecution of their claims against the NSK Defendants in the NSK Action.

In exchange for the settlement payment and cooperation, the proposed settlement provides, *inter alia,* for the release by Direct Purchaser Plaintiff and other members of the Settlement Class of "Released Claims" against Minebea and other "Releasees" (as defined in the Settlement Agreement).   The Released Claims are antitrust and similar claims arising from the conduct alleged in the Complaint.   The release specifically excludes certain claims against Minebea, including: claims based upon indirect purchases of Small Bearings; negligence, personal injury, and product defect claims; and claims relating to purchases of Small Bearings outside the United States.  (2:17-cv-10853, Doc. No. 4-1 at ¶ 20).

Moreover, Minebea's sales to Settlement Class members remain in the case as a potential basis for joint and several liability and damages against other current or future Defendants in the litigation, including the NSK Action.   (2:17-cv-10853, Doc. No. 4-1 at ¶ 44).   Plaintiff is continuing to prosecute its claims against the NSK Defendants.

Plaintiff believes that the proposed settlement is fair, reasonable and adequate to the Settlement Class.   The Settlement Agreement was consummated only after arms-length negotiations between experienced and sophisticated counsel.   It is the result of good faith negotiations, after factual investigation and legal analysis by experienced counsel, and is based upon the attorneys' full understanding of the strengths and weaknesses of their respective positions.

Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court.  *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who

4

have engaged in arms-length settlement negotiations, is appropriate.") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp.2d 336, 341 (E.D. Pa. 2007).

As discussed herein, because the proposed Minebea settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, and is fair, reasonable, and adequate, Direct Purchaser Plaintiff respectfully submits that it merits final approval.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.   The Governing Standards for Final Approval.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497, at 11 (E.D. Mich. June 20, 2016) (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013). *Accord UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions); *Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016).

A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem*

5

*CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at \*14-15 (E.D. Mich. Oct. 18, 2010).

A court has broad discretion in deciding whether to approve a class action settlement. *UAW*, 497 F.3d at 636.  In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-length settlement. *Dick*, 297 F.R.D. at 297 ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation."). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that a judge reviewing a settlement should not "substitute his or her judgment for that of the litigants and their counsel." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006).  In light of the uncertainties and risks inherent in any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness."  *Sheick,* 2010 WL 4136958, at \*15 (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution."  *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at \*23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

**B.     The Proposed Settlement is Fair, Reasonable, and Adequate.**

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is "fair, reasonable, and adequate." *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011).   Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981).   There are two reasons for this.   First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits.  *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988).    Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001) (citing *Manual (Third)* §30.42).   This is particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).

Courts in the Sixth Circuit have identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8.   *Accord Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 10; *UAW*, 497 F.3d at 631; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), *appeal dismissed* (Dec. 4, 2015).   No single factor is dispositive.   When evaluating the fairness of a settlement, the court may weigh each factor based

on the circumstances of the case, *Ford*, 2006 WL 1984363, at *21, and may "choose to consider only those factors that are relevant to the settlement at hand. *Id.* at *22. *See also Grenada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205–06 (6th Cir.1992) (district court enjoys wide discretion in assessing the weight and applicability of factors). As discussed more fully below, the Minebea settlement is fair, reasonable, and adequate under the relevant criteria, and should be approved under Rule 23(e)(2).

> **1.      The Likelihood of Plaintiff's Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval.**

When considering the fairness of a class action settlement, a court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick,* 2010 WL 4136958, *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015).

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. In assessing the parties' dispute and weighing the likelihood of plaintiff's success on the merits if the litigation continues against the benefits of the settlement, the ultimate question for the court is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued. *Sheick,* 2010 WL 4136958, at *16 (citing *IUE–CWA*, 238 F.R.D. at 595).

The settlement provides an excellent result for the Settlement Class in light of the substantial risks of continuing litigation. In negotiating the settlement, Settlement Class Counsel took into account the evidence supporting Direct Purchaser Plaintiff's claims, the dollar volume of Minebea's Small Bearings sales, the defenses that Minebea raised or was expected to raise,

and the substantial value provided by Minebea's agreement to cooperate with Direct Purchaser Plaintiff in the continued prosecution of its claims against the NSK Defendants.

Plaintiff is optimistic about the likelihood of ultimate success in this matter against all the Defendants, but success is not certain.  As this Court has observed, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice, which is not required to prove class-wide impact or damages, both of which require complex, risky and expensive expert analyses.  *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11.

Minebea is represented by highly experienced and competent counsel, and Plaintiff believes that it was prepared to defend this case through trial and appeal, if necessary.  Litigation risk is inherent in any litigation, and this is particularly true with respect to class actions.  So, while it is optimistic about the outcome of this litigation, Plaintiff must acknowledge the risk that Minebea could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating any potential recovery.

These risks must be weighed against the settlement consideration: $9,750,000 in cash, together with substantial cooperation by Minebea, which is valuable to the Settlement Class members as they continue to litigate against the NSK Defendants.  *See, e.g.*, *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 ("Of great importance in the Court's assessment is the provision in the Settlements requiring discovery cooperation of certain Settling Defendants.").  Cooperation is a "substantial benefit" to the class when settling with less than all defendants.  *Linerboard*, 292 F. Supp. 2d at 643.  The cooperation to be provided by Minebea under the Settlement Agreement provides just such a substantial benefit to the class.  *See In re Packaged Ice Antitrust Litig.,* No. 08-MD–1952, 2011 WL 717519 at *10 (E.D. Mich. Feb. 22, 2011).

9

Settlement Class Counsel believe that the settlement is an excellent result.  Weighing the settlement's benefits against the risks of continued litigation tilts the scale toward approval.  *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

### 2.     The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'"  *Cardizem,* 218 F.R.D. at 523 (*quoting Vukovich*, 720 F.2d at 922.  "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523.  This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

Plaintiff is still litigating with the NSK Defendants, so it would be imprudent to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation because the NSK Defendants could then use such disclosures against Plaintiff going forward.  Settlement Class Counsel believe it is sufficient at this point to state that complex antitrust litigation of this scope has inherent risks that the settlement at least partially negates.

The proposed settlement eliminates the risks, expense, and delay that would otherwise exist with respect to a recovery from Minebea, ensures substantial payments to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against the Defendants in the NSK Action.  This factor also supports final approval of the proposed settlement.

### 3.      The Judgment of Experienced Counsel Supports Approval.

In deciding whether to approve a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008).  Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9.  "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23.

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation.  They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation*, and negotiated this settlement at arm's length with well-respected and experienced counsel for Minebea.  Settlement Class Counsel believe the proposed settlement is an excellent result.

### 4.      The Amount of Discovery Completed Is Sufficient.

Settlement Class Counsel have had access to relevant information about the Small Bearings conspiracy through the production and review of documents, the deposition of an NSK employee, and proffers of information.  Relevant information also was obtained from the related criminal litigation, and through Settlement Class Counsel's investigation.[7]  The information from

---

[7] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor. *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *5-6 (E.D. Mich. Aug. 2, 2010).  The "question is whether the parties had adequate information about their

11

these sources and their factual and legal analysis allowed Settlement Class Counsel to evaluate not only the strengths and weaknesses of the legal case, but also the potential value of the promised cooperation. Based on this information, Settlement Class Counsel believe that the proposed settlement with Minebea is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports final approval of the settlement.

### 5.      The Reaction of Class Members.

The Court cannot yet assess this factor. But even if there were to be some objections, their "existence… does not mean that the settlement is unfair." *Telectronics,* 137 F. Supp. 2d at 1018. A "scarcity of objections – relative to the number of class members overall – indicates broad support for the settlement among Class Members." *Sheick*, 2010 WL 4136958 at *22; *accord In re Cardizem,* 218 F.R.D. at 527. Settlement Class Counsel will submit to the Court a report on objections or opt-outs, if any, after the January 8, 2018 deadlines, and prior to the Fairness Hearing, which is scheduled for February 28, 2018.

### 6.      The Settlement is the Product of Arm's-Length Negotiations.

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-20. Settlement Class Counsel have extensive experience in handling class action antitrust cases and other complex litigation, and they negotiated at arm's length with counsel for Minebea. Consideration of this factor fully supports final approval of the settlement as well.

---

claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)). *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

7.     **The Settlement is Consistent with the Public Interest.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiff submits that there is no countervailing public interest that provides a reason to disapprove the proposed settlement. *Griffin*, 2013 WL 6511860, at *5. This factor also supports approval.

Consideration of the above factors supports final approval of the proposed Minebea settlement. Settlement Class Counsel respectfully submit that the proposed settlement is in the best interests of the Settlement Class and should be approved.

## IV.   NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013).

For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition;

13

(3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3).  *Id.*

The notice program and forms of notice utilized by Plaintiff satisfies these requirements.[8] The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also apprises Settlement Class members that Direct Purchaser Plaintiff will seek an award of attorneys' fees and reimbursement of litigation expenses.

Pursuant to the Notice Dissemination Order, on November 14, 2017, 1,047 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants.  The Summary Notice was published in the national edition of *The Wall Street Journal* and in *Automotive News* on November 27, 2017.  In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[9]

The content and method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process.  *See Packaged Ice*, 2011 WL 717519, at *5.

---

[8] The proposed notice program and forms of notice have been approved by the Court in connection with numerous settlements, including in the *Wire Harness Litigation* (2:12-cv-00101, Doc. Nos. 162, 320, 474), in *Instrument Panel Clusters* (2:12-cv-00201, Doc. No. 91) and in *Occupant Safety Systems* (2:12-cv-00601, Doc. Nos. 97, 116).

[9] Consistent with paragraph 11 of the Notice Dissemination Order, a Declaration or Affidavit confirming that notice to the Settlement Class was disseminated in accordance with the Order will be filed at least 10 days prior to the Fairness Hearing.

V.   **CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE**

In the Preliminary Approval Order, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed Minebea settlement, the following Settlement Class:

> All individuals and entities (excluding any Defendant and their present and former parents, subsidiaries, and affiliates) that purchased Small Bearings in the United States directly from one or more Defendants from January 1, 2003 through February 15, 2017.

2:17-cv-10853, Doc. No. 14 at ¶ 4.

It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 24; *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[10]

As demonstrated below, the Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

A.   **The Proposed Direct Purchaser Minebea Settlement Class Satisfies Rule 23(a).**

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).   Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there

---

[10] The Preliminary Approval Order (2:17-cv-10853, Doc. No. 14 at ¶ 10) provides that provisional certification of the Settlement Class will be without prejudice to the rights of any defendants to contest certification of any other class proposed in these coordinated actions. *See Packaged Ice*, 2011 WL 717519, at *7.

are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

### 1.      The Settlement Class is Sufficiently Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity).  *See also Davidson v. Henkel Corp.,* 302 F.R.D. 427, 441 (E.D. Mich. 2014) (noting it is generally accepted that class of 40 or more members is sufficient to satisfy the numerosity requirement).  Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members.  *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to over 1,000 entities, geographically dispersed throughout the United States, that have been identified by Defendants as potential direct purchasers of Small Bearings.  Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.      There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, if "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 79 F. Supp 3d 712, 731 (E.D. Mich. 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs.,*

*Inc.*, No. 10-cv-10620, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS, § 18.05-15 (3d ed. 1992)).   Here, whether Defendants entered into an agreement to artificially fix prices of Small Bearings is a factual question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on Class members. *Packaged Ice*, 2011 WL 717519, at *6 (commonality requirement satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members").   "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484.   Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.    Plaintiff's Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among

named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiff's claims arise from the same course of conduct as the claims of the other Settlement Class members: the Defendants' alleged violations of the antitrust laws. Plaintiff and the other members of Settlement Class are proceeding on the same legal claim, alleged violations of Section 1 of the Sherman Antitrust Act. *See UAW*, 497 F. 3d at 625; *Barry v. Corrigan*, No. 13-cv-13185, 2015 WL 136238, at *13 (E.D. Mich. Jan. 9, 2015). Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

Fed. R. Civ. P. 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 02, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed representative of the Settlement Class, McGuire Bearing Company, are the same as those of other Settlement Class members. Plaintiff is the assignee of a direct purchaser of Small Bearings from a Defendant in

the United States.[11]   Plaintiff and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy, and seek to prove that Defendants violated the antitrust laws.  Plaintiff's interests are thus aligned with those of the Settlement Class.

Moreover, Plaintiff has retained qualified and experienced counsel to pursue this action.[12] Settlement Class Counsel vigorously represented Plaintiff and the Settlement Class in the settlement negotiations with the Minebea Defendants, and have vigorously prosecuted this action.  Rule 23(a)(4)'s adequacy requirement is therefore satisfied.

### B.   Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying Rule 23(a), Plaintiff must show that the proposed class action falls under at least one of the three subsections of Rule 23(b).  Here, the Settlement Class qualifies under Fed. R. Civ. P. 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

---

[11] *See, e.g.*, *Cordes & Company Financial Services. Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101 (2d Cir. 2007) (assignee possesses same interest and may assert a claim for the same injury shared by all class members).

[12] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class.   The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* cases.  They submit that, for the same reasons that the Court appointed them to that position, their appointment as Settlement Class Counsel is appropriate.  Cera LLP, and Cohen Milstein Sellers & Toll are law firms that have worked cooperatively and extensively with Interim Co-Lead Counsel on this case.  Both firms have extensive experience handling class action antitrust cases and other complex litigation, and are well-equipped to serve as additional Settlement Class Counsel.

### 1.      Common Legal and Factual Questions Predominate.

Rule 23(b)(3)'s requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive" to warrant certification.   *Amchem*, 521 U.S. at 623.   The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."   *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question.   *Scrap Metal*, 527 F.3d at 535; *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 27; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010).   Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'….   Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied."   *Scrap Metal*, 527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each member of the Settlement Class.   As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Small Bearings is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects.   *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6.   If Plaintiff and the other members of the Settlement Class were to bring their own individual actions, they would each be required to prove the same wrongdoing

20

by Defendants in order to establish liability.  Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2.    A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

The two class action Small Bearings cases were brought and are centralized in this Court. No other Small Bearings case has been filed.  If, however, a Minebea Settlement Class member wants to control its own litigation, it can request exclusion from the Minebea Settlement Class. Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial.  *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."  *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)).  Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Class. *E.g.,*

21

*Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury.")  The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996).  Thus, class litigation is superior to the alternatives in this case.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Minebea settlement, and certify the Settlement Class for purposes of the settlement only.

DATED: December 18, 2017                    Respectfully submitted,


                                             /s/David H. Fink
                                            David H. Fink (P28235)
                                            Darryl Bressack (P67820)
                                            Nathan J. Fink (P75185)
                                            FINK + ASSOCIATES LAW
                                            38500 Woodward Ave, Suite 350
                                            Bloomfield Hills, MI 48304
                                            Telephone: (248) 971-2500

                                            *Interim Liaison Counsel*




Steven A. Kanner                           Joseph C. Kohn
William H. London                          William E. Hoese

22

Michael E. Moskovitz
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Class Counsel and Settlement Class Co-Lead Counsel*

M. John Dominguez
COHEN MILSTEIN SELLERS
  & TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 833-6575

Solomon B. Cera
Thomas C. Bright
Pamela A. Markert
CERA LLP
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230

*Settlement Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2017, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com
 nfink@finkandassociateslaw.com

{00177844 }                                    1